<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of United States Department of Housing and Urban Development ("HUD") and the United States Department of Veterans Affairs ("VA") (collectively the "United States"), Guaranteed Rate, Inc. ("GRI"), and Anthonitte Carranza ("Relator") (hereafter collectively referred to as the "Parties"), through their authorized representatives.

RECITALS

A. From at least January 2008 to the present, GRI has been a Direct Endorsement Lender approved by the Federal Housing Administration ("FHA"), and a VA approved lender.

B. On June 15, 2017, Relator filed a *qui tam* action in the United States District Court for the Northern District of New York captioned *United States ex rel. Anthonitte Carranza v. Guaranteed Rate, Inc., et al.*, No. 17-cv-637 (MAD/DJS), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) ("Civil Action"). Relator alleged, *inter alia*, that GRI knowingly originated and underwrote FHA-insured and VA guaranteed mortgages that failed to meet applicable requirements related to origination and underwriting.

C. For purposes of this Agreement, GRI agrees that it engaged in certain conduct set forth in Attachment A in connection with its origination, underwriting, quality control, and business practices involving single-family residential mortgage loans insured by the FHA or guaranteed by the VA on or after January 1, 2008, that resulted in claims submitted to FHA or VA on or before May 10, 2019, or that are listed in

Attachment B (hereafter referred to as the "Covered Conduct"). The United States contends that it has certain civil claims against GRI based upon the Covered Conduct.

       D.      This Settlement Agreement is not an admission of liability by GRI nor a concession by the United States that its claims are not well founded.

       E.      GRI has been credited in this settlement under the Department of Justice's guidelines for taking disclosure, cooperation and remediation into account in False Claims Act cases, Justice Manual §4-4.112.

       F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the Settlement Amount (defined below) and to Relator's reasonable expenses necessarily incurred and reasonable attorney's fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

       1.      GRI shall pay to the United States $15,060,000 (the "Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Northern District of New York no later than thirty (30) days after the Effective Date of this Agreement.

       2.      Conditioned upon the United States receiving the Settlement Amount from GRI and as soon as feasible after receipt, the United States shall pay $2,443,000 to Relator by electronic funds transfer.

       3.      Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon GRI's full payment of the Settlement Amount, the United

States releases GRI, together with its current and former parent corporations, predecessor and successor corporations, divisions, affiliates, and direct and indirect subsidiaries, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of fraud, payment by mistake, unjust enrichment, breach of fiduciary duty, breach of contract, negligence or any other statutory or common law cause of action that the Civil Division of the Department of Justice has authority to assert and compromise pursuant to 28 C.F.R. § 0.45(d) in connection with the Covered Conduct.

4.      Conditioned upon GRI's full payment of the Settlement Amount, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases GRI, together with its current and former parent corporations, predecessor and successor corporations, divisions, affiliates, and direct and indirect subsidiaries, and any of its current or former officers, directors, employees, agents, or attorneys, from any and all claims and causes of action of any nature and description, known or unknown, that the Relator has or may have up to and including the Effective Date relating to the Covered Conduct and all other allegations set forth in the Civil Action, including but not limited to any claims the Relator has asserted on behalf of the United States in the Civil Action, provided, however, that, nothing in this Agreement shall preclude Relator from seeking to recover her reasonable expenses necessarily incurred or reasonable attorney's fees and costs from GRI pursuant to 31 U.S.C. § 3730(d), and the United States District Court for the Northern District of New York shall have continuing jurisdiction to issue an order

with regard to the payment of reasonable expenses necessarily incurred and reasonable attorney's fees and costs.

     5.     Notwithstanding the releases given in Paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

     a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

     b.     Any criminal liability;

     c.     Except as explicitly stated in the Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

     d.     Any liability for the origination or underwriting of Home Equity Conversion Mortgages under 12 U.S.C. § 1715z-20;

     e.     Any liability, except under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a, for the loans listed in Attachment B;

     f.     Any other liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

     g     Any liability based upon obligations created by this Agreement; and

     h.     Any liability of individuals.

     6.     Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and

reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

      7.     GRI waives and shall not assert any defenses GRI may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

      8.     GRI fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that GRI has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

      9.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of GRI, and its present or former officers, directors, employees, shareholders, and agents in connection with:

     (1)  the matters covered by this Agreement;

     (2)  the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

     (3)  GRI's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

     (4)  the negotiation and performance of this Agreement;

     (5)  the payment GRI makes to the United States pursuant to this Agreement and any payments that GRI may make to Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

    b.  Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by GRI, and GRI shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

    c.  Treatment of Unallowable Costs Previously Submitted for Payment:  Within 90 days of the Effective Date of this Agreement, GRI shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by GRI or any of its subsidiaries or affiliates from the United States.  GRI agrees that the United States, at a minimum, shall be entitled to recoup from GRI any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for

payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine GRI's books and records and to disagree with any calculations submitted by GRI or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by GRI, or the effect of any such Unallowable Costs on the amount of such payments.

    10.    This Agreement is intended to be for the benefit of the Parties only.

    11.    Upon receipt of the payment described in Paragraph 1 above, the Parties shall promptly sign and file in the Civil Action a joint Partial Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

        a.    The Partial Stipulation of Dismissal shall be with prejudice as to the United States' and Relator's claims as to the Covered Conduct;

        b.    The Partial Stipulation of Dismissal shall otherwise be without prejudice as to the United States and with prejudice as to Relator as to all other allegations set forth in the Civil Action, except with respect to Relator's claim for reasonable expenses necessarily incurred and reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d), which shall not be dismissed and shall remain pending.

    12.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as set forth in Paragraph 4 above, Relator may seek reasonable expenses necessarily incurred and reasonable attorney's fees and costs pursuant to 31 U.S.C. § 3730(d).

    13.    Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

7

14. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of New York. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

15. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

16. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

17. This Agreement may be executed in counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement.

18. This Agreement is binding on GRI's successors, transferees, heirs, and assigns.

19. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

20. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

21. This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date of this Agreement"). Facsimiles of signatures, scanned copies of signatures, and signatures in portable document format (.pdf) shall constitute acceptable, binding signatures for purposes of this Agreement.

                                                        THE UNITED STATES OF AMERICA

                                                        Grant C. Jaquith
                                                        United States Attorney

DATED: 4/15/2020        BY:   */s/ Adam J. Katz*

                                                        Adam J. Katz
                                                        Assistant United States Attorney
                                                        Northern District of New York


DATED: 4/15/2020        BY:   */s/ Christopher Reimer*

                                                        Christopher Reimer
                                                        Trial Attorney
                                                        Commercial Litigation Branch
                                                         Civil Division
                                                        United States Department of Justice

GUARANTEED RATE, INC.

DATED: 4.20.20    BY: _____
Nikolaos Athanasiou
Chief Operating Officer
Guaranteed Rate, Inc.


DATED: 4/20/20    BY: _____
Michelle L. Rogers
Valerie Hletko
Katherine B. Katz
Buckley LLP
Counsel for Guaranteed Rate, Inc.

Anthonitte Carranza – RELATOR

DATED: 4/15/2020          BY: _____
                              Anthonitte Carranza

DATED: 4·15·20            BY: _____
                              Nelson Thomas
                              Jonathan Ferris
                              Thomas & Solomon LLP
                              Counsel for Anthonitte Carranza

ATTACHMENT A

Unless otherwise defined in this Attachment A, capitalized terms shall have the meaning set forth in the Settlement Agreement.

1. From at least January 2008 to the present, GRI has participated as a Direct Endorsement lender approved by the FHA and an approved lender by the VA (hereafter, FHA and VA are collectively referred to as the "Government"). As such, GRI has the authority to originate, underwrite, and endorse single-family residential mortgage loans for FHA insurance and VA guaranty.

2. When a borrower defaults on an FHA-insured or VA-guaranteed mortgage loan (collectively, "Government Loan") and the mortgage terminates, the lender (or a mortgage holder or servicer that has obtained the mortgage or servicing rights in the loan from the lender after the loan closed) has the option of submitting a claim to the Government to obtain compensation for certain losses sustained as a result of the default. When such claim is submitted, the Government pays the claim amount, often the balance of the loan (or in the case of VA loans, up to 50% of the loan), and typically assumes ownership and possession of the property securing such loan. As such, once a mortgage loan is endorsed for FHA insurance or guaranteed by the VA, HUD insures the entire risk or VA assumes some of the risk of the borrower defaulting on that mortgage.

3. Government lenders, such as GRI, are required to follow applicable FHA and VA program rules, and implement sufficient business practices, designed to ensure that only mortgages that meet the credit and underwriting requirements set by FHA and VA are endorsed or guaranteed by the Government. These program rules include, for example, maintaining a quality control program that can prevent and correct deficiencies in the underwriting practices, self-reporting any materially deficient loans that they

1

identify, and ensuring that underwriters are not compensated on a commission basis and the loan process is free from conflicts of interest.

4.      The United States has investigated GRI with regard to its origination, underwriting, quality control, and the business practices described in Paragraphs 6 through 9 of this Attachment, as well as its submissions of certifications, related to Government Loans endorsed or guaranteed on or after January 1, 2008 that resulted in claims submitted to the Government on or before May 10, 2019 (the "Released Claims Loans"), as well as the loans listed in Attachment B, which did not result in claims submitted to the Government on or before May 10, 2019 (the "Released Non-Claims Loans") (collectively, the "Released Loans").

5.      GRI underwrote and originated certain Released Loans that did not meet all applicable program requirements and therefore were not eligible under those programs, despite representing that such loans complied with applicable program requirements.

6.      GRI generally did not adhere to Government self-reporting requirements. However, the Company had already updated its business practices related to Government self-reporting prior to the United States' disclosure of its investigation to the Company.

7.      GRI's FHA underwriters received commissions and/or gifts in violation of applicable FHA program requirements.  However, GRI already revised its underwriter compensation policy prior to the United States' disclosure of its investigation to the Company and, after learning of the Government's concerns, updated its gift policy.

8.      GRI maintained an electronic folder within its loan file repository system that was created for the purpose of housing documents not relevant to the underwriter's decision whether to approve the loan – for example, expired or duplicative documents.

However, inconsistent with the folder's purpose or policy, there were instances in which Company employees placed or instructed others to place Government Loan documents in that folder that were relevant to the loan approval process. Some GRI underwriters were also instructed not to review documents in that folder. After the Government brought this issue to the Company's attention, GRI promptly reorganized its loan file repository system and instructed underwriters that they may review any documents contained in the loan file.

9. There were also instances in which loans were reassigned from one underwriter to another, or "exceptions" to Government underwriting requirements were granted by GRI management, which, on occasion, resulted in the approval of ineligible loans. The Company has revised its practices to reduce discretion of underwriting managers and underwriting leadership to reassign loans or to approve exceptions.

10. As a result of GRI's conduct and omissions, GRI certified and the Government insured and guaranteed certain loans approved by GRI that were not eligible for FHA mortgage insurance or VA loan guaranty under the Direct Endorsement program or the VA Home Loan Guarantee program, and that HUD and VA would not otherwise have insured or guaranteed. HUD and VA subsequently incurred losses when it paid claims on those Released Claims Loans.

11. The statements above concerning GRI's historical business practices apply only to the Released Loans which are the subject of the release in the Agreement. This document is not an admission of any legal liability. GRI reserves the right to contest the use or application of this document in any future litigation.

ATTACHMENT B

| FHA Case Number |
|---|
| 137-5766208 |
| 132-3472606 |
| 132-3455281 |
| 137-9740742 |
| 461-6437223 |
| 277-2755931 |
| 251-5401933 |
| 341-1696420 |
| 095-1991897 |
| 095-2793834 |
| 137-9532919 |