**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA EX REL.**
**ANTHONITTE CARRANZA,**

                                        **Plaintiff,**

          **vs.**                                               **1:17-cv-637**
                                                                **(MAD/DJS)**

**GUARANTEED RATE, INC., and**
**VICTOR CIARDELLI,**

                                        **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**THOMAS, SOLOMON LAW FIRM**               **J. NELSON THOMAS, ESQ.**
693 East Avenue                            **JONATHAN W. FERRIS, ESQ.**
Rochester, New York 14607
Attorneys for Plaintiff

**BUCKLEY LLP**                            **MEGAN WHITEHILL, ESQ.**
1133 Avenue of the Americas
Suite 3100
New York, New York 10036
Attorneys for Defendants

**BUCKLEY LLP**                            **SCOTT SAKIYAMA, ESQ.**
353 North Clark Street, Suite 3600
Chicago, Illinois 60654
Attorneys for Defendants

**KAPLAN HECKER & FINK LLP**              **VALERIE HLETKO, ESQ.**
350 Fifth Avenue, Suite 7110
New York, New York 10118
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Relator Anthonitte Carranza, commenced this *qui tam* action on June 15, 2017,

bringing claims against Defendants Guaranteed Rate and Victor Ciardelli. *See* Dkt. No. 1.

Plaintiff asserted claims of civil fraud under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, for damages sustained by the United States Department of Housing and Urban Development ("HUD"), the Federal Housing Administration ("FHA"), and the United States Department of Veteran Affairs ("VA"). *Id*. at ¶ 2.  On August 3, 2020, Plaintiff filed a stipulation of dismissal after entering into a settlement agreement with Defendants.  Dkt. No. 27.  On August 7, 2020, Defendants filed a joint partial stipulation and order of dismissal.  Dkt. No. 30.  The stipulation of dismissal provided that the Court will continue to have jurisdiction over the remaining issue, *i.e.*, the payment of Plaintiff's reasonable attorney's fees and expenses necessarily incurred.  *Id*.

On September 4, 2020, Plaintiff moved for attorney's fees.  Dkt. No. 39.  Defendants filed a response on September 21, 2020.  Dkt. No. 40.  Plaintiff filed a reply on October 5, 2020.  Dkt. No. 46.  Plaintiff filed a motion on September 23, 2020 to amend her motion for attorney's fees. Dkt. No. 41.  Defendants filed a response to Plaintiff's motion to amend on October 6, 2020.  Dkt. No. 48.  Lastly, on October 5, 2020, Plaintiff filed a motion to strike reference to settlement communications in Defendants' response to Plaintiff's motion for attorney's fees.  Dkt. No. 47. Defendants filed a response to Plaintiff's motion to strike on October 12, 2020.[1]  Dkt. No. 49.

Currently before the Court are Plaintiff's motion for attorney's fees, motion to strike, and motion to amend.  Dkt. Nos. 39, 41, 47.  For the reasons set forth below, Plaintiff's motion for attorney's fees is granted in part; Plaintiff's motion to amend her attorney's fees application is granted; and Plaintiff's motion to strike is denied.

## II. BACKGROUND

---

[1] Defendants assert that Plaintiff's motions should all be denied as Plaintiff failed to comply with the Local Rule 7.1 requirement that she confer with opposing counsel and request a pre-motion hearing.  Dkt. No. 48 at 1, n.1; Dkt. No. 49 at 1.  The Court declines to dismiss Plaintiff's motions for this reason but notes that further similar conduct will not be tolerated and the Court will reject future noncomplying as required by Local Rule 7.1(a)(3).

Plaintiff commenced this *qui tam* action on June 15, 2017, bringing claims against Defendants Guaranteed Rate and Victor Ciardelli. *See* Dkt. No. 1. Plaintiff asserted that Defendant Guaranteed Rate is a government approved lender and, from at least June 2011 to the present, Defendant Guaranteed Rate engaged in a regular practice of reckless origination and underwriting of government loans and falsely certified to the government that these loans were eligible for government insurance. *Id*. at ¶¶ 31-32, 245.

Plaintiff further alleges that Defendant Guaranteed Rate engaged in practices such as, *inter alia*, pressuring employees to approve ineligible loans and making improper calculations of borrower's income related to overtime and bonus earnings to inflate borrowers' income, which led to underwriters violating HUD and VA rules in order to approve ineligible loans. *Id*. at ¶¶ 36-38. Plaintiff asserts that Defendant Victor Ciarrdelli was the founder and Chief Executive Officer of Guaranteed Rate and acted in concert with others to develop Defendant Guaranteed Rate's policies and practices regarding FHA and VA loans. *Id*. at ¶¶ 72-74.

Plaintiff further alleges that Defendant Guaranteed Rate would pay Plaintiff and other employees a twenty-five-dollar commission for any government file she approved and ultimately closed, regardless of whether the file complied with government requirements. *Id*. at ¶¶ 266, 276. Plaintiff repeatedly tried to address issues regarding the approval of government loans with various supervisors at Guaranteed Rate, but she was continually brushed off and told to ignore any issues. *Id*. at ¶¶ 288-95, 311, 345-47. Plaintiff asserts that financial incentives, such as commissions, and setting approval quotas pressured employees to approve noncomplying loans for government insurance. *Id*. at ¶¶ 337-53.

Plaintiff alleges that the Government suffered loss by insuring loans that were improperly certified and endorsed by Defendant Guaranteed Rate. *Id*. at ¶¶ 217-36, 638-41, 652.

Additionally, Plaintiff asserts that Defendants retaliated against her by firing her for reporting issues with approving loans for government insurance. *Id*. at ¶¶ 349, 564-84.

On January 17, 2018, the Government filed a letter requesting an extension of time to determine whether it would intervene in this matter. Dkt. No. 5. The Government's request was granted. Dkt. No. 6. The Government requested four more extensions between July 13, 2018 and February 14, 2020. Dkt. Nos. 7, 9, 11, 13. All requests were granted. Dkt. Nos. 8, 10, 12, 14. On April 29, 2020, the Government filed a notice to intervene in part and declining to intervene in part and attached the settlement agreement reached by the parties. Dkt. No. 15.

On August 3, 2020, Plaintiff filed a stipulation of dismissal. Dkt. No. 27. On August 7, 2020, Defendants filed a joint partial stipulation and order of dismissal. Dkt. No. 30. The settlement agreement provided that Defendants would pay $15,060,000 to the United States and $2,443,000 to Plaintiff. Dkt. No. 15-1 at 2. The parties left the issue of the payment of Plaintiff's reasonable attorney's fees and expenses necessarily incurred to the Court. *Id*.

Prior to settling this action, Plaintiff served discovery requests on Defendants on June 29, 2020, seeking information regarding Defense Counsel's fees and billing practices. Dkt. No. 40-2. On July 2, 2020, Defense Counsel emailed Plaintiff's Counsel requesting that Plaintiff make a demand for attorney's fees. Dkt. No. 40-3. Defense Counsel echoed this request again via email on July 13, 2020 and July 21, 2020. Dkt. No. 40-4 at 2-3, 5.

On July 28, 2020, Plaintiff requested until February 1, 2021 to file her motion for fees, premised on a need for discovery from Defendants. Dkt. No. 21. Defendants opposed the motion asserting that the requested discovery was neither necessary nor appropriate under the relevant rules. Dkt. No. 23 at 3-4. On August 7, 2020, the Court rejected Plaintiff's request and directed her to file her motion on or before September 4, 2020. Dkt. No. 31. On August 11, 2020,

Plaintiff requested a teleconference to discuss the September 4, 2020 deadline.  Dkt. No. 32.

Defendants again opposed the request.  Dkt. No. 33.  On August 20, 2020 Plaintiff served

additional discovery requests.  Dkt. No. 40-6.  Plaintiff's request for discovery and an extension to

move for attorney's fees was denied on August 24, 2020.  Dkt. No. 38.

On August 20, 2020, Plaintiff made a demand of $395,000 for attorney's fees and costs.

Dkt. No. 40-5.  Defendants rejected Plaintiff's offer on August 26, 2020 and made a counteroffer

of $20,000.  Dkt. No. 40 at 6.  Plaintiff then made a counteroffer of $375,000.  *Id*. at 7.

Defendants rejected this counteroffer.  *Id*.  On September 4, 2020, Plaintiff moved for attorney's

fees and costs in the amount of $294,161.78.  Dkt. No. 39-1 at 2.  On October 5, 2020, Plaintiff

requested an additional $50,532.50 in attorney's fees and costs.  Dkt. No. 46 at 10.

### III. DISCUSSION

**A.     Plaintiff's Motion to Strike**

On October 5, 2020, Plaintiff filed a motion to strike settlement communications under Federal

Rule of Evidence 408.  Dkt. No. 47.  Plaintiff asserts that Defendants' reference to settlement

negotiations and use of the Settlement Agreement is barred by Federal Rule of Evidence 408(a).

*See id.* at 1-3.  Defendants assert that this evidence is admissible under the Rule 408(b) "another

purpose" exception.  The Court agrees.

Because a decision on the motion to strike may affect the outcome of the pending motion

for attorney's fees, it is appropriate to consider a motion to strike prior to the motion for attorney's

fees. *See Pugliese v. Verizon New York, Inc.*, No. 05-CV-4005, 2008 WL 2882092, *5 (S.D.N.Y.

July 9, 2008) (quoting *Gucci Am., Inc. v. Ashley Reed Trading, Inc.*, No. 00-CV-6041, 2003 WL

22327162, *2 (S.D.N.Y. Oct. 10, 2003)).  Motions to strike "are generally considered redundant

and inappropriate by this Circuit's courts."  *Id.* (citing *Wanamaker v. Town of Westport Bd. of*

*Educ.*, No. 3:11CV1791, 2013 WL 3816592, *2 (D. Conn. July 22, 2013)). "Rather, '[t]he parties to an action should have faith . . . that the court knows the difference between admissible and non-admissible evidence, and would not base a ... decision simply upon the self-serving *ipse dixit* of a particular party.'" *Id.* (quoting *Carone v. Mascolo*, 573 F. Supp. 2d 575, 580 (D. Conn. 2008)).

Rule 408 of the Federal Rules of Evidence prohibits the introduction of evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim," as well as "conduct or a statement made during compromise negotiations about the claim" in order "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Thus, Rule 408 "essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351 (2d Cir. 2009) (citing Fed. R. Evid. 408).

However, Rule 408 does not bar the use of this "evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Courts have consistently held that the use of settlement negotiations is permissible under the "another purpose" exception where it was offered to show that the attorney's fees requested were unreasonable. *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 136 (D. Conn. 2010) (citations omitted); *Monsour v. New York State Office for People with Developmental Disabilities*, No. 1:13CV00336, 2018 WL 3349233, *15, n.20 (N.D.N.Y. July 9, 2018) (citing cases); *Dagostino v. Computer Credit, Inc.*, 238 F. Supp. 3d 404, 415 (E.D.N.Y. 2017) (citations omitted); *EMI*

6

*Catalogue P'ship v. CBS/Fox Co.*, No. 86 CIV. 1149, 1996 WL 280813, \*2 (S.D.N.Y. May 24, 1996); *Ingram v. Oroudijan*, 647 F.3d 925, 927 (9th Cir. 2011) (holding that the district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorney's fees award).

Defendants do not offer this evidence in order "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Rather, Defendants have offered the evidence for "another purpose." Defendants offer the settlement agreement and discussions during negotiation to establish (1) that, contrary to Plaintiff's assertions, the agreement does not assert that Plaintiff's counsel is entitled to reasonable attorney's fees and (2) that Plaintiff's counsel acted unreasonably by failing to make a timely settlement demand which included attorney's fees and instead, submitted numerous discovery requests to drive up the cost of litigation. Dkt. No. 40 at 3-4. Defendants' use of the settlement agreement and reference to discussions during negotiation is permissible. *See Master-Halco*, 739 F. Supp. 2d at 136-37. Plaintiff's motion to strike is denied.[2]

## B.    Plaintiff's Request for Discovery

Without expressly requesting discovery, Plaintiff asserts that by merely objecting to Plaintiff's motion, Defendants have opened the door to discovery of their fees. Dkt. No. 39-1 at 2, 15-16 (citing *Mendez v. Radec Corp.*, 818 F. Supp. 2d 667, 669 (W.D.N.Y. 2011)). However, in *Mendez*, defense counsel used their fees as a yard stick to demonstrate the unreasonableness of the plaintiff's requested fees. *Mendez*, 818 F. Supp. 2d at 669. The court held that, in doing so, defense counsel opened the door to discovery regarding their rates. *Id.* Unlike *Mendez*, Defense

---

[2] Plaintiff has requested that if her motion to strike is denied, that the Court grant her leave to respond to the reference in Defendants' opposition reference to the settlement negotiations and settlement agreement. Dkt. No. 47-1 at 4. Plaintiff has already filed a reply to Defendants' opposition and chose not to respond to Defendants' allegations. Dkt. No. 46. Plaintiff's request is therefore denied.

Counsel did not compare Plaintiff's Counsel's rates to their own.  Rather, Plaintiff continually attempts to use Defense Counsel's rates to establish a "national rate" and to otherwise justify their position that Plaintiff's Counsel is entitled to rates higher than those typically awarded in the Northern District of New York.. Dkt. No. 39-1 at 15-16.

Discovery relating to attorney's fees is particularly inappropriate in the present matter.  A large portion of the attorney's fees sought in this case relate to work done before the complaint was even filed in this matter.  Then, the Government was provided with a significant amount of time to determine whether it would intervene in this case.  During that time, the complaint remained under seal, with Defendants presumably unaware that this litigation had been commenced.  Once the Government intervened, Plaintiff's Counsel's role in this matter was exceedingly limited.  While some courts have permitted discovery pertaining to opposing counsel's fees, it has almost uniformly been permitted when a challenge has been made to the reasonableness of the time spent on specific tasks, where the time spent by opposing counsel can be used as a benchmark.  *See Marks v. Const. Co., Inc. v. Huntington Nat. Bank*, No. 1:05-cv-73, 2010 WL 1836785, *2-3 (N.D. W.Va. May 5, 2010) (citing cases).  Here, however, no such challenge has been made.  *See Okyere v. Palisades Collection, LLC*, 300 F.R.D. 149, 151 (S.D.N.Y. 2014).  Further, once the Government intervened in this case and Defendants were served with the complaint and engaged in settlement discussions of this case, Plaintiff's Counsel had limited involvement, as reflected in their billable hours.  Defendants' Counsel, however, was actively involved in defending this case and, undoubtedly, expending significantly more time than Plaintiff's Counsel.  Given the limited role Plaintiff's Counsel had in bringing this case to settlement once the Government intervened, it is clear that Defendants' Counsel's billable records would be of little-to-no probative value.  *See Okyere*, 300 F.R.D. at 151.

Accordingly, Plaintiff's request for discovery is, once again, denied.

**C.    Plaintiff's Motion to Amend**

Plaintiff has moved to amend her motion for attorney's fees to replace Exhibit A with corrected contemporaneous billing records.  Dkt. No. 41-1.  Defendants do not object.  Dkt. No. 48 at 1-2.  Plaintiff's motion to amend is granted.

**D.    Plaintiff's Motion for Attorney's Fees**

Plaintiff has moved for $344,694.28 in attorney's fees and expenses.[3]  Dkt. No. 39-1 at 2; Dkt. No. 46 at 1.  Defendants assert that Plaintiff's Counsel's requested rates are unreasonable and that the hours billed are unreasonable, excessive, and include multiple instances of block billing. Dkt. No. 40 at 18-24.  Additionally, Defendants assert that Plaintiff's Counsel's billing practices do not meet the requirements of the Second Circuit and must be denied or reduced significantly. Dkt. No. 48 at 1-2.  The Court agrees that a reduction in the amount requested is appropriate.

"Under the FCA, a relator who brings a successful *qui tam* lawsuit is entitled to attorneys' fees." *United States ex rel. Rubar v. Hayner Hoyt Corp*., 306 F. Supp. 3d 478, 488 (N.D.N.Y. 2018) (citing *United States ex rel. Keshner v. Nursing Pers. Home Care*, 794 F.3d 232, 237 (2d Cir. 2015)).  In the Second Circuit, "[a]ttorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (citation omitted).  Ultimately, "[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v.*

---

[3] Plaintiff's initial motion seeks $283,373 in attorney's fees and $10,788.78 in costs.  *See* Dkt. No. 39-1 at 2.  In her reply, Plaintiff seeks an additional $47,982.50 in attorney's fees and $2,550 in costs, which were incurred since September 1, 2020.  *See* Dkt. No. 46 at 10.

*N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation omitted); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015).  The party seeking attorneys' fees "'bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed.'"  *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (quotation omitted).

In calculating the "presumptively reasonable fee," the Second Circuit has held that a district court is "to bear in mind *all* of the case-specific variables that [courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," which is "the rate a paying client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis in original).  The relevant factors for a court to consider include, but are not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case.  *See id.* at 184 n.2.[4]

### 1. *Reasonable Hourly Rate*

---

[4] The Second Circuit also suggests in *Arbor Hill* that the district court should consider the twelve factors delineated in *Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  *Arbor Hill*, 522 F.3d at 186 n.3.   The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.

An attorney's reasonable hourly rate is defined as "the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson*, 652 F.3d at 290 (quoting *Simmons*, 575 F.3d at 174); *see also Monsour v. New York State Off. for People with Dev. Disabilities*, No. 1:13-CV-00336, 2018 WL 3349233, *17 (N.D.N.Y. July 9, 2018) (explaining that an attorney's hourly rate is considered reasonable when it is "in line with the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (quoting *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994)).  "Paralegal services are includable in an award of attorneys' fees, and the reasonableness of their fees are also determined by reference to the prevailing hourly rate in the relevant community." *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 720 (S.D.N.Y. 2018) (citing *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000)).  The "court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district" and "on evidence proffered by the parties." *Adorno v. Port Auth.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (internal quotation marks omitted), *reconsideration granted in part*, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).

A district court may apply an out-of-district rate if the party seeking the higher rate rebuts the Second Circuit's presumption in favor of application of the forum rule. *See Simmons*, 575 F.3d at 175-76.  The Second Circuit has held that

> when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule.  In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel

because doing so would likely (not just possibly) produce a
substantially better net result.

*Id.* at 175.  To rebut that presumption, a party seeking higher out-of-district rates "must make a

particularized showing, not only that the selection of out-of-district counsel was predicated on

experience-based, objective factors, but also of the likelihood that use of in-district counsel would

produce a substantially inferior result." *Id.* at 176.  "Among the ways an applicant may make

such a showing is by establishing that local counsel possessing requisite experience were

unwilling or unable to take the case, ... or by establishing, in a case requiring special expertise,

that no in-district counsel possessed such expertise." *Id.* (internal citation omitted).

Plaintiff is represented by Thomas & Solomon Law Firm, a Rochester, New York-based

law firm.  Plaintiff has moved for attorney's fees at an hourly rates of $550 per hour for attorney

Nelson Thomas,[5] $500 per hour for attorney Michael Lingle,[6] $350 for attorney Jonathan Ferris,[7]

$225 for attorneys Camilla Scannell and Connor Tallet, and $150 for paralegals Samuel Noto,

---

[5] Mr. Thomas is a 1993 graduate of the University of Virginia School of Law and a founding partner of Thomas & Solomon LLP.  Dkt. No. 39-2 at ¶ 14.  In Mr. Ferris' affidavit, he states that Mr. Thomas's experience involves successfully representing relators in whistleblower cases and complex employment class-action lawsuits.  *Id.*  Mr. Ferris further asserts that Mr. Thomas has received multiple awards and recognition for this excellent practice of law and has held continuing education presentations regarding FCA practice.  *Id.*

[6] Michael Lingle is a partner at Thomas & Solomon LLP and a 2000 graduate of Harvard Law School.  *Id.* at ¶ 15.  In Mr. Ferris' affidavit, he states that Mr. Lingle frequently counsels relators in FCA litigation and has worked on nearly all of Thomas & Solomon LLP's *qui tam* actions.  *Id.*  Mr. Ferris further asserts that Mr. Lingle has received multiple awards and recognition for this excellent practice of law and has held continuing education presentations regarding FCA practice.  *Id.*

[7] Jonathan Ferris is an associate at Thomas & Solomon LLP and a 2012 graduate of Albany Law School.  Dkt. No. 39-2 at ¶ 16.  In Mr. Ferris' affidavit, he states that he devotes a significant part of his practice to representing whistleblowers in *qui tam* actions.  Mr. Ferris has also presented at continuing legal education seminars regarding FCA litigation.  Mr. Ferris further asserts that he has received recognition for this excellent practice of law.  *Id.*

Johnathan Francisco, Mitchell Hopper, Marcus Young,[8] Kyle Chesterman, and Jessica Brown.
Dkt. No. 39-1 at 2; Dkt. No. 39-2 at ¶¶ 13-20; Dkt. No. 46-6 at 2.

Plaintiff provides no information regarding the expertise of Ms. Scannell, and no
information regarding the expertise or experience of Mr. Tallet or any of the paralegals.  Dkt. No.
39-2 at ¶¶ 13-20.  Mr. Ferris' affidavit implies that Ms. Scannell has no FCA experience and had
only recently graduated law school.  *Id*. at ¶ 17.  Plaintiff's Counsel is not entitled to higher out-
of-district rates for Ms. Scannell, Mr. Tallet, or these paralegals.  Rather, Plaintiff's counsel is
entitled to rates on the lower end of the range that are used in the Northern District, and therefore
hours billed by Ms. Scannell and Mr. Tallet are entitled to a rate of $165 per hour and $80 per
hour for hours billed by the paralegals.  *Richardson v. New York State Office of Mental Health*,
No. 6:11CV1007, 2018 WL 2021536, *2 (N.D.N.Y. Apr. 30, 2018) (rejecting rates of $175 for
associate attorneys and $100 for paralegals where the plaintiff provided no information about the
qualifications of the associate attorneys and paralegals who worked on the case).

Regarding the rates for attorneys Thomas, Lingle, and Ferris, Plaintiff has not made a
showing that they are entitled to higher out-of-district rates.  Foremost, Plaintiff makes no
showing of what Plaintiff's Counsel's fees actually are and has merely asked for arbitrary amounts
because they are less than what is charged in the "national market," which Plaintiff asserts is
about $1000 an hour.  Dkt. No. 39-1 at 12-13.  However, Plaintiff provides no caselaw within the
Second Circuit calling for the Court to look to a "national market."  *See id*.  Rather, the Second
Circuit case law is clear, that only in exceptional circumstances will the Court apply higher out-
of-district rates because a client "wishes to pay the least amount necessary to litigate the case
effectively."  *Arbor Hill*, 522 F.3d at 184; *Simmons*, 575 F.3d at 175.

---

[8] Plaintiff requests an hourly rate of $150 for Marcus Young but has not submitted any
hours billed by him.

In Plaintiff's reply, she acknowledges that the "national market" is not the appropriate standard and states that her counsel is entitled to higher out-of-district rates because Plaintiff's choice of out-of-district counsel was predicated on experience-based, objective factors; and no in-district counsel possessed such expertise as Plaintiff's Counsel.  Dkt. No. 46 at 5.[9]

Plaintiff asserts that the settlement in this case is the largest FCA settlement ever in the Northern District of New York and no local counsel has ever settled a mortgage fraud FCA case. *See id.* at 6.  However, the Court is quick to point out that while Plaintiff's Counsel may have expended a great deal of effort in this case, they did not settle it.  The United States Government intervened in the case on April 29, 2020 and settled the case.  Dkt. No. 15; Dkt. No. 16. Ultimately, Plaintiff's Counsel's unwillingness to engage in productive settlement negotiations regarding their fees and persistent requests for discovery has kept this case going and prohibited it from settling in its entirety.

Additionally, Plaintiff's Counsel has prolonged a resolution to her motion for attorney's fees by completely ignoring and disregarding Second Circuit precedent in her motion and by making repeated meritless requests for discovery.  While a party is certainly entitled to argue for a change in the law or assert that the facts of the present situation warrant a different outcome, Plaintiff's brief and discovery requests do not make such arguments.  Rather, they disregard Second Circuit precedent entirely and only acknowledge that they do not comport with the law in this circuit after being confronted by Defendants with controlling caselaw—despite further acknowledging that they were aware of the controlling case law to begin with.  *See* Dkt. No. 46 at

---

[9] Generally, when out-of-district counsel seeks attorney's fees at hourly rates higher than those typically awarded in the forum district, the fees sought are based on the rates charged in that attorney's home district.  Plaintiff's counsel likely seeks to apply a "national market" rate in these cases because their firm is based in Rochester, New York, where hourly rates for attorneys are generally commensurate with those charged in the Northern District of New York.

3.  This is particularly noteworthy as Plaintiff seeks an additional $50,532.50 in attorney's fees and costs for 123.3 hours billed since finalizing her motion for attorney's fees.  Dkt. No. 46 at 10.

Regardless, Plaintiff asserts that FCA cases are complex and require a great deal of skill to litigate, thus entitling Plaintiff's Counsel to higher out-of-district rates.  Dkt. No. 39-1 at 12. However, this Court has held that "the FCA is relatively straightforward, [and] there are firms within this district capable of handling such matters and obtaining similar results." *Hayner Hoyt Corp*., 306 F. Supp. 3d at 489 (declining to award attorney's fees at New York City rates and instead awarding fees "at the higher end of the prevailing District rate" based on the attorneys' specialized expertise in FCA cases, the length of time spent on the case, the amount involved in the case, and the results obtained).  Thus, an FCA case does not *per se* "persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175.

While Mr. Ferris' affidavit lists the recognition and awards of attorneys Thomas, Lingle, and Ferris, it does not indicate how many years each attorney has been working on FCA cases or to what extent they handle matters other than FCA cases.  *Id*. at 175–76 ("In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors.  Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise").  While Mr. Thomas, Mr. Lingle, and Mr. Ferris may have considerable experience, their experience, representation thus far, and the nature of this case do not warrant a departure from what has been upheld as a reasonable local rate.

"[A] district court may use a percentage deduction of the requested fees 'as a practical means of trimming fat from a fee application[.]'" *Rubar*, 306 F. Supp. 3d at 489 (quoting

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).  "In determining the appropriate fee, district courts have substantial deference and may use estimates based on their overall sense of a suit."  *Rubar*, 306 F. Supp. 3d at 489 (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)).  "Recent cases in the Northern District have upheld hourly rates between $250 and $345 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals."  *Richardson v. New York State Office of Mental Health*, No. 6:11-CV-1007, 2018 WL 2021536, *2 (N.D.N.Y. Apr. 30, 2018) (citing *Rodriguez v. Berryhill*, No. 5:15-CV-1000, 2017 WL 2929470, *3 (N.D.N.Y. July 10, 2017)); *but see Rubar*, 306 F. Supp. 3d at 489.

The Court awards an hourly rate of $300 per hour for Mr. Thomas, $250 per hour for Mr. Lingle, and $180 per hour for Mr. Ferris.  Such fees adequately compensate Plaintiff's Counsel for their expertise, their diligence in filing Plaintiff's claim, the results obtained, and reflects the relative complexity of the case.  Additionally, these fees are appropriate given the number of hours expended and its minimal effect on precluding the attorneys' ability to accept other work—as over 60% of the hours billed occurred in the first three months of this action and the remaining 266.6 hours billed between the 10 employees occurred over the remaining almost three years and four months.  Dkt. No. 39-1 at 6.  Further, these rates are appropriate given Plaintiff's Counsel's refusal to disclose their actual fees despite continually requesting that the Court order Defense Counsel to do so.[10]

---

[10] When addressing the *Johnson* factor that specifically calls for counsel's customary rate, rather than directly responding to this factor, Plaintiff's Counsel simply states that "the marketplace for FCA attorneys is a specialized one.  Relator's Counsel's rates for FCA litigation are far below the specialized market rates for FCA litigators."  Dkt. No. 39-1 at 25.

Thus, the rates requested by Plaintiff are unreasonable and the Court awards attorney's fees at the following rates, $300 per hour for Mr. Thomas, $250 per hour for Mr. Lingle, $180 for Mr. Ferris, $165 per hour for Ms. Scannell and Mr. Tallet, and $80 per hour for paralegals.

### 2. Reasonableness of Hours

"The fee applicant also bears the burden of documenting the hours spent by counsel, and the reasonableness thereof." *Stevens v. Rite Aid Corp.*, No. 6:13-CV-783, 2016 WL 6652774, *4 (N.D.N.Y. July 6, 2016). In the Second Circuit, "'any attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.'" *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). The district court "should exclude . . . hours that were not 'reasonably expended,'" including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted). "In excluding hours that were not reasonably expended, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Osterweil*, 2015 WL 1066404, at *8 (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

Plaintiff has requested compensation for 816.9 hours expended by Plaintiff's Counsel and staff. Dkt. No. 39-1 at 17; Dkt. No. 46-6. Defendants assert that these hours are not reasonable because Plaintiff has failed to provide contemporaneous billing records, the records contain block billing and are replete with excessive, redundant, or otherwise unnecessary expenditures. Dkt. No. 40 at 19-24. The Court agrees in part.

17

Defendants rely on *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 1660551, *1 (S.D.N.Y. Mar. 21, 2016) as support that Plaintiff's Counsel's records are not contemporaneous. Dkt. No. 48 at 1-2. Defendants assert that because Plaintiff's Counsel tracked their hours in Microsoft Excel and then copied them into Word, they were not contemporaneous and therefore Plaintiff's motion for attorney's fees should be denied. *Id.* However, in *Mirra*, counsel would record entries in billing software within two days of completing the work but failed to explain whether or not she kept any records as she worked. *Mirra*, 2016 WL 1660551, at *1.

Here, Defendants have not raised any issue as to whether contemporaneous records were kept. Rather, Defendants merely object to Plaintiff's use of Excel to track their billing. Dkt. No. 48 at 2. However, in *Cruz*, the Second Circuit expressly rejected the argument that the district court improperly awarded fees where counsel "did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records." *Cruz*, 34 F.3d at 1160. Therefore, as Plaintiff's Counsel's records specify, for each attorney, the date, the hours expended, and the nature of the work done and were recorded when made, Plaintiff has sufficiently met her burden of providing contemporaneous billing records.

However, the hours requested are excessive. As in *Mendez*, Plaintiff's Counsel prolonged this action by failing to make reasonable demands for attorney's fees during settlement discussions. *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 358 (W.D.N.Y. 2012). Plaintiff's Counsel billed 103.8 hours on "post-merits work," including "time spent drafting discovery requests, correspondence with defendants over relator's right to discovery, attempting to confer with defendants regarding the outstanding discovery, legal research and briefing regarding the need for discovery prior to the submission of the fees motion, and preparing this motion." Dkt. No. 39-2 at ¶ 65. Plaintiff then incurred an additional $47,982.50 in attorney's fees since

finalizing her motion for attorney's fees—billing an additional 123.3 hours.  Dkt. No. 46 at 10.

As a result, over a quarter of the attorney's fees Plaintiff seeks are related to this motion and the

pursuit of discovery pertaining to attorney's fees.  Plaintiff's counsel has spent an absurdly

excessive amount of time attempting to secure attorney's fees and this appropriately warrants a

significant reduction in fee hours.[11]  *See Mendez*, 907 F. Supp. 2d at 358.

        Additionally, Plaintiff's Counsel engaged in "block billing" by grouping tasks together,

making the Court unable to determine how much time was assigned to each task.  *Id.*  For

example, on May 16, 2017, Mr. Thomas spent 2.3 hours preparing for and attending a phone call,

and also reviewing and drafting a list of interview questions.  Dkt. No. 41-3 at 4.  Mr. Ferris also

billed 6.4 hours that day for preparing a memo and having a telephone call with Plaintiff.  *Id.*  On

March 23, 2017, Mr. Thomas spent 3.4 hours preparing for a phone call, having that phone call,

and drafting a disclosure statement and complaint.  *Id.* at 5.  On June 6, 2017, Mr. Ferris spent 3.5

hours on the phone with Plaintiff and drafting multiple emails.  *Id.*  Mr. Ferris also billed 13.7

hours for attending Plaintiff's interview, reviewing strategy, debriefing Plaintiff, and traveling to

Rochester.  *Id.* at 7.  These are but a few examples.

        Further, Plaintiff's Counsel engaged in redundant and unreasonable billing practices.

Plaintiff's Counsel sent three attorneys and a paralegal to Chicago to prep Plaintiff for her

interview.  *Id.*  Plaintiff's Counsel had three attorneys follow up with Assistant U.S. Attorney

Katz regarding Plaintiff's interview.  *Id.*  Mr. Ferris billed 3.6 hours at a rate of $350 an hour for a

block billing entry which included drafting a letter to have a docket entry removed—a task much

more appropriate for a paralegal than a fifth-year associate.  *Id.* at 12.  Mr. Thomas also billed

$550 per hour to resolve a signature issue—again the precise amount of time spent on this issue is

---

[11] For instance, in one of the more egregious examples of spending an unreasonable
amount of time on a given task, Plaintiff's Counsel is seeking compensation for 81.2 hours spent
on drafting its reply to the motion for attorney's fees.  *See* Dkt. No. 46-6 at 2-3.

unclear due to Plaintiff's Counsel's practice of block billing. *Id*. Mr. Ferris also billed $350 per hour to prepare cost invoices, which is again a task more appropriate for a paralegal and the time spent on this is unclear due to Plaintiff's Counsel's block billing. *Id*. at 13.

In *Mendez*, Plaintiff's Counsel engaged in the same practices and as a result, the Western District of New York reduced Plaintiff's Counsel's hours by 70%. *Mendez*, 907 F. Supp. 2d at 359. Defendants argue that the Court should reduce Plaintiff's Counsel's hours by at least 70% and possibly more due to Plaintiff's Counsel's recidivism. Dkt. No. 40 at 21. The Court agrees that a reduction is warranted, but not 70%. Rather, the Court believes that a 20% reduction in the hours billed sufficiently accounts for the redundant and excessive time billed and results in a reasonable fee award. Moreover, this reduction appropriately takes into account Plaintiff's Counsel's prolonging of the resolution of this matter by not providing Defendant's Counsel withh a reasonable settlement offer, as well as Plaintiff's motions to strike and for discovery, while perhaps not warranting the tag of frivolous, were of dubious merit at best. Therefore, the Court finds that the reasonable number of hours expended in this case is 653.52 hours.

Based upon the Court's adjusted hourly rates and adjusted number of hours, the Court finds that Plaintiff is entitled to attorney's fees in the amount of $141,537.90, calculated as follows:

| Attorney/ Paraprofessional | Hourly Rate Requested | Hourly Rate Awarded | No. of Hours Requested | No. of Hours Awarded | Amount Awarded |
|---|---|---|---|---|---|
| J. Nelson Thomas | $550 | $300 | 292.6 | 234.08 | $70,224 |
| Michael Lingle | $500 | $250 | 46.7 | 37.36 | $9,340 |
| Johnathan Ferris | $350 | $180 | 365.1 | 292.08 | $52,574.40 |
| Camilla Scannel | $225 | $165 | 26.5 | 21.20 | $3,498 |
| Connor Tallet | $225 | $165 | 5.7 | 4.62 | $762.30 |
| Samuel Noto | $150 | $80 | 45.9 | 36.72 | $2,937.60 |

| Johnathan Francisco | $150 | $80 | 22.2 | 17.76 | $1,420.80 |
| Mitchell Hopper | $150 | $80 | 7.6 | 6.08 | $486.40 |
| Kyle Chesterman | $150 | $80 | 1.3 | 1.04 | $83.20 |
| Jessica Brown | $150 | $80 | 3.3 | 2.64 | $211.20 |

### 3. Reasonableness of Expenses

It is well-settled in the Second Circuit that "'attorneys' fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 2001) (quoting *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). In *LeBlanc-Sternberg*, the Second Circuit provided a non-exhaustive list of costs that are recoverable, including photocopying, travel, reproduction and postage expenses, and computerized research. *See id.* (citing cases).

Plaintiff requests $13,338.78 in expenses. Dkt. No. 39-4 at 2; Dkt. No. 46-6 at 3. Defendants have not objected to the reasonableness of these expenses. *See* Dkt. No. 40.

Of these expenses, Plaintiff's Counsel incurred $5,955.07 in expenses related to "a trip," presumably Plaintiff's Counsel's trip to Chicago. Dkt. No. 39-4. Plaintiff's Counsel provides no explanation for why it was necessary or reasonable to send four staff members on this trip. However, given the lack of objection from Defendants, the Court will not dissallow this expense. In her reply, however, Plainitff seeks an additional $2,550 expense for "services rendered" by Jeremy Friedman, Esq. *See* Dkt. No. 46-6 at 3. Plaintiff fails to provide any explanation for this cost, which is dated September 21, 2020 (after the motion for attorney's fees was filed but before Plaintiff's reply). Without any explanation as to what this charge relates to (and being unable to fathom what Plaintiff's Counsel spent $2,550 on in connection with their reply to the motion for

attorney's fees) the Court will disallow this expense.  Plaintiff's Counsel is therefore entitled to $10,788.78 in expenses.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's Motion for Attorney's Fees is **GRANTED** in the amount of $141,537.90, as broken down above; and the Court further

**ORDERS** that Plaintiff is awarded costs of $10,788.78; and the Court further

**ORDERS** that Plaintiff's motion to amend (Dkt. No. 41) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to strike (Dkt. No. 47) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 10, 2021
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

22